UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTY MICHELL JACKSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-CV-236

HON. PAUL L. MALONEY

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Christy Jackson seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.

*See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-four years of age on the date of the ALJ's decision. (PageID.64, 139.) She completed the eleventh grade, and was previously employed as a fast food worker, assistant manager, and manager. (PageID.113–114.) Plaintiff previously applied for benefits on September 26, 2011, which resulted in an unfavorable decision by an ALJ on May 24, 2013. (PageID.120–138.) It does not appear that this application was further pursued. Rather, on June 14, 2013, Plaintiff filed a second application for benefits, alleging that she had been disabled since May 1, 2010, due to bipolar disorder, major depression, suicidal thoughts, and a limited ability to read and write. (PageID.139, 219–226.) Plaintiff's application

was denied on July 18, 2014, after which time she sought a hearing before an ALJ. (PageID.160–172.) In a pre-hearing brief, dated January 5, 2013, Plaintiff amended her alleged onset date to May 25, 2013, the day after the previous decision. (PageID.319–320.) On January 7, 2015, Plaintiff appeared with her counsel before ALJ David S. Pang at which time Plaintiff, her caseworker, and a vocational expert (VE) testified. (PageID.84–118.) On March 24, 2015, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.64–83.) On January 5, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–37.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of May 25, 2013. (PageID.69.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) carpal tunnel syndrome; (2) migraines; (3) post-traumatic stress disorder; and (4) affective disorders. (PageID.70.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.70–72.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work, as defined in 20 CFR 404.1567(b), except with no more than frequent handling, fingering, pushing, and pulling with upper extremities, and no climbing ladders, ropes, and scaffolds or work at unprotected heights. She is further restricted to work requiring simple, routine, repetitive tasks, with no more than occasional interaction with supervisors, coworkers, and general public.

(PageID.72.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.77.) At the fifth step, the ALJ questioned the VE to determine whether

a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a table worker (43,00 Michigan jobs and 229,000 national jobs), assembler of electrical equipment (4,200 Michigan jobs and 180,000 national jobs), and production assembler (12,000 Michigan jobs and 200,000 national jobs). (PageID.114–115.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.78.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from May 25, 2013, through March 24, 2015, the date of decision. (PageID.78–79.)

## DISCUSSION

**1.     The ALJ's Analysis of the Opinion Evidence.**

On November 3, 2014, Dr. Gopal Bedi, M.D., completed a Mental RFC worksheet that offered his opinion regarding Plaintiff's limitations. (PageID.647–649.) Dr. Bedi provided a range of limitations in sixteen categories. In three, he stated Plaintiff's abilities were unlimited, or very good. In seven other categories Plaintiff had limited, but satisfactory, abilities. Her abilities were seriously limited in three categories, and she was unable to meet competitive standards in three other categories. (PageID.647–648.) Next, Dr. Bedi remarked on Plaintiff's functional limitations and opined that Plaintiff was moderately limited in activities of daily living, extremely limited in maintaining social function, and markedly limited in maintaining concentration, persistence or pace. (PageID.648.) Finally, Dr. Bedi indicated that were she to work, he would expect Plaintiff would be absent more than four days per month. (PageID.649.) The worksheet was accompanied by a one-page statement that expanded on his opinions. (PageID.650.) Plaintiff also submitted a signed declaration from Dr. Bedi, in which the doctor responded

to questioning from Plaintiff's counsel. (PageID.654–656.)

The record also contains the opinion of Dr. Ruqiya Tareen, M.D., a nonexamining agency consultant. (PageID.145.) Dr. Tareen generally found Plaintiff was less limited than that found by Dr. Bedi. For example, the doctor indicated that Plaintiff had only mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and that Plaintiff had experienced no episodes of decompensation, each of extended duration. (PageID.145.) Dr. Tareen also found that Plaintiff was not significantly limited in the ability to remember locations and work-like procedures; remember, understand, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions. The doctor also found Plaintiff would have no social interaction limitations, but would be moderately limited in the ability to carry out detailed instructions, as well in completing a normal workday or workweek without interruptions and in performing at a consistent pace without an unreasonable number and length of rest periods. (PageID.150.)

Plaintiff also points to an assessment update, dated November 14, 2014, from her case manager, Ms. Kimberly Jourden. Ms. Jourden remarked on the degree of Plaintiff's limitation in several different areas. She noted that Plaintiff was able to independently maintain her personal hygiene, but needed assistance in such areas as self direction, activities of daily living, and learning and recreation. Ms. Jourden also found that Plaintiff was unable to maintain her interpersonal functioning, defined as interacting appropriately, communicating effectively, and getting along with others. (PageID.579.)

Plaintiff's first claim of error is that the ALJ erred in failing to assign controlling weight to Dr. Bedi's opinion and in assigning more weight to Dr. Tareen's opinion. (PageID.685–692.) Later, Plaintiff claims the ALJ erred in discounting Ms. Jourden's opinion. (PageID.694–695.) The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Bedi qualifies as a treating physician.[2]

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of*

---

[2] The record shows that Dr. Bedi began treating Plaintiff on August 14, 2014, and had examined Plaintiff a total of three times through November 3, 2014, the date of his opinion. In similar circumstances, the Sixth Circuit found it "questionable" whether such a physician would qualify as a treating source. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 n.3 (6th Cir. 2011). Here, the ALJ classified Dr. Bedi as a "treating provider" and, as noted, the parties do not dispute this assertion. Ultimately the Court need not decide whether Dr. Bedi qualifies as a treating source as, even if he does, the ALJ's analysis satisfies the treating source rule.

*Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

    A.    Dr. Bedi.

The ALJ explained he assigned little weight to Dr. Bedi's opinion because:

> First, he had treated the claimant for only three months prior to rendering his opinion, provided little to no treatment notes to support his opinion, (instead relied on a check the box form with little explanation), and fails to provide a logical bridge between objective treatment records and the reported limitations. Additionally, the objective records show less limiting symptoms. For example, the claimant generally appeared alert, oriented times three, lucid, coherent, denied depression, dressed appropriately, fair hygiene, insight and eye contact, and had no suicidal or homicidal ideations during multiple objective examination[s]. (B4F/16. B6F/13, 23). She also reported a higher level of daily activities than Dr. Bedi's limitations would suggest, as she reported being capable of preparing meals, performing housework, doing laundry, cleaning, doing dishes, watching television, and shopping despite her symptoms. (B4E/8-9.)

(PageID.76.)

Though the ALJ considered Dr Bedi to be a treating source, it was not in error for the ALJ

to note the doctor had nonetheless only been treating Plaintiff for three months and had examined Plaintiff only three times prior to rendering his opinion. (PageID.76.) Social Security regulations explicitly state that the length of a treating relationship and frequency of examinations are relevant considerations in weighing medical opinions. 20 C.F.R. § 404.1527(c)(2)(i). Similarly the ALJ did not err in noting there was little explanation accompanying the checkbox worksheet and that the doctor had failed to "provide a logical bridge between objective treatment records and the reported limitations." (PageID.76.) Again, this is a relevant consideration. 20 C.F.R. § 404.1527(c)(3). True, Plaintiff submitted a one-page explanation as well as a declaration by Dr. Bedi. But nowhere within those pages does Dr. Bedi explain why Plaintiff would have extreme difficulties in maintaining social functioning. Nor does the doctor explain what led him to find Plaintiff had marked difficulties in maintaining concentration, persistence, or pace. (PageID.650, 654–656.)

Much of Plaintiff's argument consists of referencing numerous records and arguing the ALJ "cherry picked" three records and ignored "the plethora of other examinations." (PageID.688, 691.) Arguments that an ALJ mischaracterized or "cherry picked" the administrative record are frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). When courts review an ALJ's decision under 42 U.S.C. § 405(g) to determine whether substantial evidence supports that decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if this Court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 147 (6th Cir. 1990). "As long as the ALJ cited substantial,

legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The ALJ noted that despite Plaintiff's subjective complaints, the objective record did not support the doctor's opinion. For example, on January 14, 2014, Dr. Mauli Verma found Plaintiff was alert, oriented, dressed appropriately, and had fair hygiene and eye contact. (PageID.526.) On July 16, 2014, Dr. Verma noted that Plaintiff made eye contact, and that she "has been getting more and more cooperative and engaging much better as every time goes by." (PageID.597.) On September 22, 2014, Dr. Bedi noted Plaintiff was appropriately dressed. She was polite and friendly. His assessment was that Plaintiff was lucid and coherent. She denied auditory and visual hallucinations, as well as feelings of depression and suicidal or homicidal thoughts. She was oriented to time, person, place, and situation. (PageID.587.) Accordingly, substantial evidence exists to support Dr. Bedi's statement that the treatment notes were inconsistent with Dr. Bedi's opinion.

    B.     Dr. Tareen.

The ALJ gave "great weight" to Dr. Tareen's opinion. He noted that as an agency consultant, Dr. Tareen was familiar with agency rules and regulations, and that the doctor's opinion was consistent with the overall record. (PageID.75–76.) The ALJ was free to consider the consultant's opinion and determine what weight, if any, it should be given. As the ALJ correctly noted, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Barker*

*v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ also explained that he assigned greater weight to Dr. Tareen's opinion because it was consistent with the medical record. As discussed above, the medical evidence indicated that Plaintiff's ability to work was not limited to the extent she alleged.

Plaintiff claims, however, that because Dr. Tareen did not review the record after June 17, 2014, the ALJ could not rely on the doctor's opinion to deny benefits. However, an ALJ is not precluded from relying on the opinion of a non-examining state agency physician that did not consider the complete medical record if the ALJ gives "some indication that [he] at least considered [the additional evidence] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting SSR 96–6p, 1996 WL 374180, at *3). The ALJ gave such an indication here. Moreover, Plaintiff fails to demonstrate how the evidence dated after Dr. Tareen's review, had it been considered, would have led the doctor to a different conclusion.

Plaintiff also contends that the ALJ did not explain why he did not adopt Dr. Tareen's opinion that Plaintiff would have moderate limitations in concentration persistence or pace, and would have moderate difficulty in completing a normal workday or workweek without interruptions. (PageID.692.) But the ALJ did find that Plaintiff had moderate limitation in concentration, persistence, or pace–consistent with Dr. Tareen's opinion. (PageID.71.) And Plaintiff fails to demonstrate how Dr. Tareen's opinion regarding Plaintiff's ability to complete a workday and workweek is inconsistent with the limitations offered by the doctor. *See Kardos v. Comm'r of Soc. Sec.*, No. 1:11-CV-964, 2013 WL 1869110, at *1 (W.D. Mich. May 3, 2013) (collecting cases and noting that "an RFC's limitation to simple repetitive tasks may very well be adequate to address a claimant's moderate impairment as to concentration, persistence, and pace.").

In sum, Plaintiff has shown no error here.

C.   *Ms. Jourden.*

The ALJ assigned little weight to Ms. Jourden's opinion.  He noted that she was not an acceptable source, and she had provided little explanation in support of her opinion.  The ALJ also found the statements were not supported by the objective record. (PageID.76.)  The ALJ was correct that as a social worker, Ms. Jourden was not an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a), (d); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 119 (6th Cir. 2010). There is no "treating social worker rule," and the opinion of a social worker is not entitled to any particular weight. *See Hayes v. Comm'r of Soc. Sec.*, No. 1:09–cv–1107, 2011 WL 2633945, at *6 (W.D. Mich. June 15, 2011) (collecting cases).

> Social Security Rulings acknowledge that:
>
> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006).  Accordingly, the ruling further provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the

outcome of the case." *Id.* at *6. This standard was easily met here. The ALJ thoroughly discussed the opinion and provided several reasons for assigning it only little weight. In addition to noting that Ms. Jourden provided no supporting explanation for her checkmark indications, the ALJ noted that the opinion was contrary to the evidence of record, including Ms. Jourden's own findings, which remarked that Plaintiff had "made significant improvement in control of her symptoms through medication adjustment." (PageID.577.) The Court finds no error here.

For all the above reasons, this claim of error is denied.

### 2.  The ALJ's Step Three Analysis is Supported By Substantial Evidence.

The "Listing of Impairments" is set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Plaintiff next argues she meets the requirements of Listing 12.04 and 12.06.

A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An

13

impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.* Listings 12.04 and 12.06 also contain paragraph C criteria, which are additional functional criteria. *Id.* "The requirements in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* Listing 12.04 is met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Similarly, Listing 12.06 is met "when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Plaintiff contests the ALJ's paragraph B finding, claiming that it is unsupported by substantial evidence.

As noted above, the paragraph B severity requirements of Listings 12.04 and 12.06 require

at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see also Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 993 (6th Cir. 2007). The ALJ found that Plaintiff did not meet the requirements of paragraph B because she had no more than mild restrictions in activities of daily living, no more than moderate difficulties in social functioning, no more than moderate limitations with regard to concentration, persistence or pace, and had experienced no episodes of decompensation, which had been of extended duration. (PageID.71–72.) Plaintiff reasserts that the ALJ should have adopted Dr. Bedi's opinion that she met the paragraph b criteria.

Although the ALJ must "consider opinions from medical sources on issues such as whether [the claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . the final responsibility for these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). The ALJ was not required to give Dr. Bedi's opinions any special significance. *See Saucier v. Comm'r of Soc. Sec.*, 552 F. App'x 926, 928 (11th Cir. 2014); *Lowry v. Astrue*, 474 F. App'x 801, 804–05 (2d Cir. 2012); *Russell v. Astrue*, 356 F. App'x 199, 203 (10th Cir. 2009); *see also Vardon v. Colvin*, No. 5:13–cv–2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner.") (citing 20 C.F.R. § 416.927(e)); *Kepke v. Comm'r of Soc. Sec.*, No. 13–13944, 2015 WL 348747, *7 (E.D. Mich. Jan. 23, 2015) ("Since the Commissioner is responsible for determining whether a claimant

meets the statutory definition of disability, the ALJ 'will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner . . .' [such as] whether an impairment meets or equals a Listing [.]" (quoting 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)).

As noted above, the ALJ considered the opinion of Dr. Bedi, but nonetheless concluded Plaintiff failed to demonstrate that she met the paragraph B requirements. The ALJ provided, in some detail, several reasons for this finding, largely based on Plaintiff's own statements made in her function report. (PageID.71–72.) Plaintiff claims the ALJ "grossly overstated" her activities. (PageID.696.) While the ALJ perhaps could have more thoroughly described Plaintiff's function report, substantial evidence nonetheless supports his decision. For example, the ALJ found that Plaintiff had no more than a mild limitation in activities of daily living. Though Plaintiff reported difficulties in handling her personal care (something that the ALJ acknowledged) Plaintiff reported being able to take her medications. (PageID.276.) She also reported being able to prepare meals daily or every other day. (PageID.277.) This included making sandwiches, frozen meals, as well as meat. (PageID.277.) She could do laundry and, though she reported it took her all day, she stated she was able to clean her house. (PageID.277.) Her case manager reported her home was "actually pretty clean." (PageID.108.) She further stated she went out once a week via public transportation and would go shopping for food and personal things. (PageID.278.) Accordingly, this determination is supported by substantial evidence.

In social functioning, Plaintiff reported being unable to get along with family, friends, neighbors, and others. (PageID.280.) She reported feeling like everyone was against her or out to get her. (PageID.280.) The ALJ found that Plaintiff was no more than moderately limited, however, as Plaintiff also stated she was able to go to therapy and to her psychiatrist on a regular basis, albeit when accompanied

by her case worker. (PageID.279.) She interacted with her daughter twice a week. (PageID.93.) Accordingly, substantial evidence supports the ALJ's determination in this functional area.

In concentration, persistence, or pace, the ALJ noted Plaintiff's complaints of being unable to pay attention, complete tasks, or follow written instructions, but noted that Plaintiff reported she was able to pay bills, count change, handling a savings account, and use a checkbook or money orders. (PageID.278.) Thus, despite Plaintiff's statements regarding her wandering mind and difficulty concentrating, substantial evidence supports the ALJ's conclusion, that she had no more than moderate limitations in concentration, persistence, and pace.

The ALJ further found that Plaintiff had experienced no episodes of decompensation, each of extended duration. (PageID.72.) Accordingly, the ALJ determined that Plaintiff did not satisfy the paragraph B criteria. The ALJ also found that Plaintiff did not satisfy the paragraph C criteria. Plaintiff does not challenge these determinations, and the record does not support a contrary conclusion.

The Court does not doubt that Plaintiff suffers from significant difficulties in these areas. However, the ALJ's conclusion that these limitations did not prevent her from gainful activity is nonetheless supported by substantial evidence. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff did not satisfy all the elements of either Listing 12.04 or Listing 12.06. This claim of error is rejected.

### 3. The ALJ's RFC determination is Supported By Substantial Evidence.

In an argument providing no legal authority, Plaintiff finally attacks the ALJ's RFC determination. (PageID.696–697.) It is, at times, not exactly clear what Plaintiff is arguing here. She generally attacks the ALJ for failing to "consider all Plaintiff's well-documented impairments."

(PageID.696.) But Plaintiff fails to identify any impairments that were supposedly overlooked. She claims that the limitation to simple, routine, repetitive tasks and only occasional interaction with others does not address her ability (or lack thereof) to stay on task. (PageID.696.) She provides no support for this authority, however, and as noted above, courts in this district have found that limitations, such as those provided in the ALJ's RFC, may suffice to account for moderate limitations in this area. *See Kardos*, 2013 WL 1869110, at *1. This argument is accordingly rejected.

Plaintiff next argues the ALJ erred by "summarily reject[ing]" her GAF scores. (PageID.697.) GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) ("no particular amount of weight is required to be placed on a GAF score") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002));*Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv-1308, 2013 WL 1305291, at *9 (W.D. Mich. Mar. 28, 2013) ("The ALJ is not required 'to put stock in a GAF score in the first place.'") (quoting *Kornecky*, 167 F. App'x at 503 n.7); *Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp. 2d 692, 696 n.3 (W.D. Mich. 2009) (collecting cases). The ALJ thoroughly examined Plaintiff's GAF scores, and assigned them "little weight" noting that they were not supported by the record evidence described above. (PageID.76.) Plaintiff has shown no error here.

Finally, in a conclusory sentence, Plaintiff states that the ALJ failed to address her "problems with concentration, inability to sustain work activity, side effects of her medication nd her inability to be around others (even for 'only' up to 1/3 of a work day)." (PageID.697.) To the extent Plaintiff raises issues not already addressed, these arguments are waived because Plaintiff fails to develop the

argument beyond this single sentence. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

For all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  December 1, 2016                                  /s/ Paul L. Maloney
                                                          PAUL L. MALONEY
                                                          United States District Judge